**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:15CV-00903-JHM**

**ROCHELLE MITCHELL, et. al.**                                                                   **PLAINTIFFS**

**VS.**

**EEG, INC. d/b/a Empire Beauty School**                                                  **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, EEG, Inc., d/b/a Empire Beauty School, to compel arbitration and to dismiss or stay this action pending resolution of Plaintiffs' claims in arbitration [DN 6] and on a motion by Plaintiffs for a hearing regarding the motion to compel arbitration [DN 28]. Fully briefed, these matters are ripe for decision.

**I. BACKGROUND**

Plaintiffs, Rochelle Mitchell, Leidre Avery, Cynthia Tobin, Miesha Rae Newby, Kee-Sha Boyd, Tasha Blakey, Jamerica English, Rosita Lewis, and Denco Clayton, commenced this putative class action against EEG by filing a complaint in the Jefferson Circuit Court on November 24, 2015, for breach of contract, breach of implied contract, fraud, civil conspiracy, violation of the Kentucky Consumer Protection Act, violation of KRS § 165A.310 and KRS § 446.070, and violation of Kentucky's Antitrust Statute KRS § 367.175. EEG removed the case to this Court on December 23, 2015.

Plaintiffs attended Empire Beauty School (hereinafter "EEG") in Louisville, Kentucky. Plaintiffs assert that EEG made numerous false representations about what the Plaintiffs would learn, whether Plaintiffs would be able to repay their student loans, whether EEG was accredited and associated with the Regis educational program, and whether EEG would assist placing students in a job after graduation. (Complaint ¶ 12.) Plaintiffs also allege that were coerced into

buying textbooks at inflated prices, induced to apply for financial aid they could not afford, taught by unqualified faculty, not given federal student loans in excess of tuition, taught in an unsafe environment, and not provided the proper materials. (Id.) Plaintiffs seek compensatory and punitive damages.

## II. DISCUSSION

EEG now moves to compel arbitration and to stay or dismiss the lawsuit pending alternative dispute resolution proceedings. The parties submit enrollment agreements for all nine Plaintiffs. The nine students signed different versions of the enrollment agreement. The enrollment agreements allow either party to elect to proceed in arbitration before the American Arbitration Association ("AAA"). The enrollment agreements signed by Mitchell, Tobin, Blakely, English, Boyd, Avery, and Lewis contain an arbitration provision which provides in relevant part that "[e]ither party may elect to settle any dispute, controversy or claim arising out of or relating to any provision of this Agreement or the interpretation, enforceability, performance, breach, termination or validity hereof by arbitration in the manner specified in this Section." (Enrollment Agreement, 6-3, ¶ 14.)

The enrollment agreements signed by Clayton and Newby contain identical arbitration provisions, but add the words "scope" and "effect" to the delegation provision. (Enrollment Agreement, DN 6-5, ¶ 14.) Specifically, these enrollment agreements provide in relevant part that "[e]ither party may elect to settle any dispute, controversy or claim arising out of or relating to any provision of this Agreement or the interpretation, scope, enforceability, performance, breach, termination, effect or validity hereof by arbitration in the manner specified in this Section." (Enrollment Agreement, 6-3, ¶ 14.)

EEG elected to proceed in arbitration pursuant to these enrollment agreements. EEG maintains that the Plaintiffs are required to submit to arbitration every claim asserted in this

lawsuit, including any challenge to the validity or enforceability of the arbitration agreements that Plaintiffs raise in their response to the motion to compel.

### A. Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "'manifests a liberal federal policy favoring arbitration agreements.'" Yaroma v. Cashcall, Inc., 130 F. Supp. 3d 1055, 1061 (E.D. Ky. 2015)(quoting Masco Corp. v. Zurich American Ins. Co., 382 F.3d 624, 626 (6th Cir. 2004). "Section 2 of the FAA states that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Id. (quoting 9 U.S.C. § 2). "Under § 4, when a party is 'aggrieved by the failure of another party to arbitrate under a written agreement for arbitration,' that party 'may petition a federal court for an order directing that such arbitration proceed in the manner provided for' by the contract." Id. (quoting Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63 (2010) (quoting 9 U.S.C. § 4) (internal quotation marks omitted)). The FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent–A–Center, 561 U.S. at 67.

Parties may agree to arbitrate disputes over gateway issues such as the validity or enforceability of an arbitration provision. Rent-A-Center, 561 U.S. at 68-69. This type of provision is known as a delegation provision. "The court regards the Delegation Provision as a 'clear and unmistakable' delegation of those threshold issues, which include the plaintiffs' enforceability challenges, to the arbitrator." Wynn v. Five Star Quality Care Trust, 2014 WL 2560603, *7 (M.D. Tenn. June 5, 2014) (citing Crossville Medical Oncology, P.C. v. Glenwood Systems, LLC, 485 Fed. Appx. 821, 823 (6th Cir. 2012) ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration?"); see also Rai v. Ernst &

3

Young, LLP, 2010 WL 3518056, *4–*5 (E.D. Mich. Sept. 8, 2010); Muhammad v. Advanced Services, Inc., 2010 WL 3853230, *5 (W.D. Tenn. Aug. 24, 2010)). "The Supreme Court has expressly found that delegation clauses must be enforced, absent a valid challenge specific to the delegation clause—as opposed to a challenge to the enforceability of the Agreement as a whole." Wynn, 2014 WL 2560603, *7 (citing Rent-A-Center, 561 U.S. at 70, 72). In such circumstances, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Center, 561 U.S. at 71.

### B. Plaintiffs' Claims

All Plaintiffs, with the exception of Rochelle Mitchell who will be discussed below, entered into an enrollment agreement which permits either party to elect arbitration of "any dispute, controversy or claim arising out of or relating to any provision" of the enrollment agreement. All of Plaintiffs' claims arise out of or relate to the enrollment agreement. Furthermore, the Plaintiffs also agreed to arbitrate any dispute over the "interpretation, enforceability, performance, breach, termination, or validity" of the enrollment agreement. The existence of such a delegation clause is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.

Plaintiffs contest the validity of the enrollment agreement arguing that it was procedurally and substantively unconscionable. (Pl.'s Resp. Br. at 6). Plaintiffs assert that the entire enrollment agreement was hidden from them, they were not permitted to review the enrollment agreement or documents before signing them, and they were never informed they were giving up their constitutional right to a jury trial or any claim for punitive damages. (Id.) Like the plaintiff in Rent-A-Center, Plaintiffs' response "fails to rebut or otherwise address in any way [EEG's] argument that the Arbitrator must decide [Plaintiffs'] challenge to the enforceability of the Agreement.'" Flint v. Bank of America, N.A., 2016 WL 1444505, *6 (E.D.

4

Mich. Apr. 13, 2016)(quoting Rent-A-Center, 561 U.S. at 73); see also Janiga v. Questar Capital Corp., 615 F.3d 735, 742 (7th Cir. 2010) (arguments that signor of arbitration agreement "did not get a copy of the contract, [ ]never read it, [ ] could not read it if he tried, and [ ] did not know what he agreed to do . . . left only . . . the question whether that contract is enforceable, and that is the kind of issue that . . . Rent-A-Center put squarely in the arbitrator's box."). Moreover, just as in Rent-A-Center, "the Court need not consider this claim since none of [Plaintiffs'] substantive unconscionability challenges are specific to the delegation provision." Flint, 2016 WL 1444505, at *6. The arguments advanced by Plaintiffs do not go to the validity of the delegation provision. Rather, the arguments go toward the validity of the enrollment agreement as a whole.

Because Plaintiffs have failed to challenge the delegation provision specifically, EEG's argument that the delegation provision is enforceable remains uncontested. Accordingly, the Court need not reach Plaintiffs' unconscionability argument as it pertains to the enrollment agreement. "The Court 'must treat [the delegation provision] as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole to the arbitrator.'" Flint, 2016 WL 1444505, *7 (quoting Rent-A-Center, 561 U.S. at 72).

### C. Rochelle Mitchell's Claims

Unlike the other Plaintiffs, Rochelle Mitchell challenges whether any agreement between Mitchell and EEG was ever concluded. Rent-A-Center, 561 U.S. at 71 n. 2 (explaining that "[t]he issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded'")). Challenges to arbitration based on "whether any agreement between the parties was actually ever concluded" are decided by the Court. Preferred Care of Delaware, Inc. v. Billie Konicov, 2016 WL 2593924, *6-7 (E.D. Ky. May 4, 2016).

In the present case, Rochelle Mitchell submitted an affidavit indicating that her signature on the enrollment agreement was forged. (Mitchell Aff. ¶ 5.) Thus, Mitchell raises a challenge to whether an agreement between EEG and Mitchell was formed in the first place. There is currently not enough evidence in the record to determine whether the signature of Mitchell on the enrollment agreement is a forgery. Therefore, the Court will order limited discovery and, after conclusion of that discovery, it will consider a new motion to compel arbitration of Rochelle Mitchell's claim should the parties deem it appropriate.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

(1) The motion by Defendant, EEG, Inc., to compel arbitration and to dismiss or stay this action pending resolution of Plaintiffs' claims in arbitration [DN 6] is **GRANTED IN PART AND DENIED IN PART**.

(2) The pending action is **STAYED** and arbitration is **COMPELLED** regarding all Plaintiffs' claims except with regard to the Rochelle Mitchell's claims against EEG.

(3) This matter is referred to the Magistrate Judge for the purpose of fashioning a limited discovery plan regarding Mitchell's claim that her signature on the enrollment agreement was a forgery.

(4) The motion by Plaintiffs for a hearing regarding the motion to compel arbitration [DN 28] is **DENIED**.

                                              **Joseph H. McKinley, Jr., Chief Judge**
                                              **United States District Court**

cc: counsel of record
    U.S. Magistrate Judge Dave Whalin

May 17, 2016